UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAWN KEHRER REVOCABLE TRUST, Dated June 6, 2012, acting by and through its sole Trustee, Dawn R. Kehrer,<br><br>    Plaintiff,<br><br>    v.<br><br>NORFOLK SOUTHERN RAILWAY COMPANY,<br><br>    Defendant. | Case No. 24-cv-1786-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendant Norfolk Southern Railway Company ("NSRC") (Doc. 8). Plaintiff Dawn Kehrer Revocable Trust ("Trust"), by its Trustee Dawn Kehrer, has responded to the motion (Doc. 19). Because the Trust has adequately pled its claims and has not pled facts showing it cannot succeed on those claims, the Court will deny NSRC's motion to dismiss.

**I.    Background**

This matter arose after an NSRC train derailed on September 19, 2022. Multiple railcars ended up on the Trust's land adjacent to the railway. One of the derailed cars released large amounts of Methyl Methacrylate Monomer ("MMA"), a hazardous material, on the Trust's land. NSRC and the Trust entered into an agreement under which NSRC would restore the Trust's land. The Trust is not happy with the restoration, so it sues NSRC here under a variety of theories.

**II.    Standard for Dismissal**

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Nevertheless, *Bell Atlantic* did not do away with the liberal federal notice pleading standard. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). A complaint still need not contain detailed factual allegations. *Bell Atl.*, 550 U.S. at 555. Nevertheless, it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*, 550 U.S. at 555. If the factual detail of a complaint is "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8," it is subject to dismissal. *Airborne Beepers*, 499 F.3d at 667; *see, e.g., Kaminski*, 8 F.4th at 776-77.

Ordinarily, affirmative defenses are not appropriate for consideration on a Rule 12(b)(6) motion to dismiss because the plaintiff has no duty to plead around them. *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022) ("[A] plaintiff's complaint need not anticipate or refute potential affirmative defenses."), *cert. denied*, 144 S. Ct. 71 (2023); *Benson v. Fannie May*

*Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019). The Court may not penalize a plaintiff for failing to anticipate an affirmative defense in its pleading. *See Benson*, 944 F.3d at 645. This standard, however, will not prevent dismissal of a complaint that pleads too much. Where the facts pled are sufficient to establish an affirmative defense, the Court may dismiss the case on that ground. *Orgone Cap. III v. Daubenspeck*, 912 F.3d 1039, 1043-44 (7th Cir. 2019) (citing *O'Gorman v. City of Chi.*, 777 F.3d 885, 889 (7th Cir. 2015)).

NSRC asks the Court to dismiss this case on the grounds that the Trust has not pled sufficient facts. For some claims, it complains that the facts pled demonstrate that the Trust is not entitled to relief because its claims are preempted by federal law.

### III. Facts

As a preliminary matter, NSRC attaches numerous documents to its motion. When such material is presented in connection with a Rule 12(b)(6) motion to dismiss, the Court may treat the motion to dismiss as a motion for summary judgment or it may exclude the additional material from consideration. *See* Fed. R. Civ. P. 12(d). However, there is an exception to this general rule where the attached material is expressly referenced in the complaint and is central to the plaintiffs' claim. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *Wright v. Assoc'd Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (citing *Venture Assocs. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993)). The Trust's agreements with NSRC fall into this category—they comprise the contract the Trust claims NSRC breached—and the Court has therefore considered those agreements. The other attachments, however, do not fall within this or any other exception, so the Court has considered them for background only.

The allegations in the Complaint and the relevant agreements establish the following facts for

purposes of this motion.

  A. <u>The Derailment</u>

  At all relevant times, the Trust owned a parcel of property at the intersection of Winter Road and an NSRC mainline railroad track in Albers, Clinton County, Illinois. The NSRC track ran along the north edge of the Trust's property. NSRC is responsible for the operations and maintenance of the track and the trains that operate on it. The Trust used its property for agricultural purposes.

  On September 19, 2022, NSRC was running a train on the tracks adjacent to the Trust's property. The train was carrying, among other things, MMA, a hazardous chemical. The train derailed, causing multiple railcars to enter onto the Trust's land to the south of the track. The derailment also caused one of those cars to release approximately 20,000 gallons of MMA onto the soil of the Trust's farmland. The Court offers this map from the file to illustrate the physical arrangement of the incident:



Def.'s Mot. Dism. Ex. 3, Focused Site Investigation Work Plan Revision 2, Figure 1, Property Map

(Jan. 25, 2024) (Doc. 8-3 at 50).[1]  The derailment and area of contamination are within the rectangle marked "Subject Site."

B. The Clean-Up

After the derailment and MMA release, the Illinois Environmental Protection Agency ("IEPA") ordered NSRC to contain the release and remove all the contaminated soil and water from the Trust's property.  Pursuant to the IEPA order, NSRC removed large amounts of soil from the release site, leaving an enormous pit in the Trust's land that soon accumulated water.

In May 2024, NSRC deposited a stockpile of large rock, commonly called rip-rap, on the Trust's land.  Thereafter, NSRC began moving the rock into the pit and also directly onto the surface of the Trust's land.  The Trust had expected NSRC to fill the pit with clean soil as was there before the MMA release.  It asked NSRC to remove the rock, but NSRC refused to do so.  Instead, it assured the Trust that no additional rock would be placed on the land, but it continued to move the stockpile of rock to the surface of the trust's land and into the pit.

The Trust believes the rock will cause settling of the ground which will adversely affect the drainage and the Trust's ability to farm the area.  It also believes the rock presents a danger to the Trust's farming equipment that it uses to work the land.

C. Parties' Agreements Regarding Clean-Up

In the meantime, to enable NSRC to perform clean-up activities, NSRC and the Trust entered into the Access Agreement ("AA") in March 2023.  In the AA, the Trust ratified NSRC's prior access and prospectively allowed continued access in order to investigate and clean up the damage caused by

---

[1] The Court does not vouch for this map's complete accuracy but intends to use it simply as an illustrative aid to assist the reader in understanding the incident.

5

the derailment, including the MMA release.   NSRC also promised to remove all of its equipment and supplies from the Trust's property and "leave the Property in the same condition as existed just prior to entry by Railroad."   Pl.'s Compl. Ex. A, AA ¶ 5 (Doc. 1-2 at 17).

When the AA expired in September 2023, the parties entered into the Access Agreement Amendment ("AAA").   The AAA extended NSRC's access to the derailment site on the Trust's property until September 2025.   It also provided that the Trust would permit its land to be enrolled in the IEPA Site Remediation Program ("SRP").   As part of the consideration given to the Trust, NSRC paid the Trust about $110,000 and promised other specific performance.

D.   The Litigation

In June 2024, the Trust sued NSRC in the Circuit Court for Clinton County, Illinois.   Count I seeks a permanent injunction forcing NSRC to remove all rip-rap from the Trust's land and to refrain from placing any additional rock there.   Count I appears to rely on the theory that placement of the rip-rap violates the AA.   Count II is a claim for negligence based on the conditions of the NSRC railroad tracks and the operation of trains carrying MMA on those tracks.   Specifically, the Trust asserts that NSRC was negligent, "in violation of law" by

> failing to maintain and inspect its tracks; failing to maintain and inspect its railroad cars; failing to provide appropriate instruction and training to its employees; failing to ensure that its tanks would not leak in the event of a derailment; and failing to provide sufficient employees to safely and reasonably operate its trains.

Compl. ¶¶ 32 & 34 (Doc. 1-2).   Count III is a nuisance claim based on NSRC's interference with the Trust's use and enjoyment of its land.   Count IV is a strict liability claim based on an allegedly abnormally dangerous activity.   Finally, Count V is a claim for trespass to land based on the original derailment and the MMA release.

NSRC now asks the Court to dismiss all of the Trust's claims on the grounds that either they

6

fail to state a claim and/or they are preempted by various federal statutes governing railroads. It notes that the work it is doing on the Trust's land is consistent with the SRP as well as other plans approved by the IEPA; the injunctive relief the Trust seeks is not.

## IV.  Discussion

### A.  Count I:  Permanent Injunction

A party seeking a permanent injunction must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Of course, a permanent injunction also requires success on the merits, not just a likelihood of success.  *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012); *Collins v. Hamilton*, 349 F.3d 371, 374 (7th Cir. 2003).

NSRC asks the Court to dismiss Count I, a claim for a permanent injunction, on the grounds that the Trust has not pled a "clear and ascertainable right in need or protection" or irreparable harm if an injunction is not granted, and that it is unlikely to succeed on the merits.[2]  NSRC argues that the Trust's fear that the rip-rap will cause settling or any permanent harm is speculative and that any harm will only be temporary.  It argues, without specific citation to any particular provision of the AA or AAA, that the Trust agreed to relinquish the right to control drainage and farming at the remediation site and waived any objections to the SRP by entering into the AA and AAA and leasing the site to

---

[2] In support of its legal argument against a permanent injunction, it cites law relating to preliminary injunctions, which is similar to, but not the same as, the law applying to permanent injunctions.

7

NSRC. It further argues that the Trust agreed to the IEPA-approved backfill material—including rip-rap—by agreeing to participate in the SRP.

The Trust contends that it has adequately pled irreparable injury because the presence of rip-rap on the land would make it impossible to farm, the Trust's desired use of the land. Such harm, it argues, is not practicable to calculate and is not adequately remedied by monetary relief. It asserts it has adequately pled NSRC's anticipatory breach of the AA by refusing to restore the land to its original condition before the derailment.

As a preliminary matter, NSRC has not identified the proper elements of a permanent injunction as a remedy for a breach of contract claim. Instead, it cites the federal standard for a *preliminary* injunction and the *state* standard for a permanent injunction. *See Hasco, Inc. v. Roche*, 700 N.E.2d 768, 774 (Ill. App. Ct. 1998). The Trust's request for a permanent injunction is governed by the federal permanent injunction standards set forth above.

Even so, the Trust clearly has a protectible fee simple interest in the land and in using it as it wishes—for farming. And it alleges it will be deprived of its ability to make productive use of its land after the environmental clean-up, arguably an irreparable harm. *7-Eleven, Inc. v. Spear*, No. 10-CV-6697, 2012 WL 13390021, n.2 at *4 (N.D. Ill. May 11, 2012) (loss of use of real property likely irreparable harm); *Lower Cook Cnty. Mobil Dealers' Ass'n v. Exxon Mobil Corp.*, No. 06 C 3652, 2006 WL 3590080, at *2 (N.D. Ill. Dec. 8, 2006) (in preliminary injunction context, land is unique, so its loss is irreparable harm for which no amount of money damages will compensate).

Indeed, the Trust alleges that, although the plan to remove contamination from the site may achieve the environmental goal, the plan will not leave the Trust's property in a state fit for farming. Whether such fears are well-supported or speculative will be born out in later stages of the case. It

8

was fit for farming prior to the contamination, and the Trust has alleged NCRS promised in the AA to return it to that condition.  Pl.'s Compl. Ex. A, AA ¶ 5 (Doc. 1-2).  If the site is decontaminated but not restored to a state that allows for its owner's preexisting and preferred use in violation of the AA, it appears that the Trust may suffer irreparable harm to its interest in its real property that is not adequately compensable by money damages.  The Trust's pleading is clear that it is seeking to avoid this harm in its request for a permanent injunction.

For these reasons, NSRC has not carried its burden of showing the Court not cannot award a permanent injunction.  Thus, the Court will not dismiss the Trust's claim seeking a permanent injunction as a remedy for breach of contract.

> B. Counts II, III, IV, and V:  Preemption

NSRC asks the Court to dismiss Counts II-V, the Trust's claims for negligence, nuisance, strict liability, and trespass, because these claims are preempted by various federal statutes dealing with railroads:  the Federal Railroad Safety Act of 1970 as amended ("FRSA"), 49 U.S.C. § 20101 *et seq.*; the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10501 *et seq.*; and the Hazardous Materials Transportation Act of 1975 as amended ("HMTA"), 49 U.S.C. § 5101 *et seq.*  After a few general observations about preemption, the Court addresses each federal statute and its preemptive effect in turn.

Federal preemption is the principle that "a federal law can supersede or supplant any inconsistent state law or regulation."  Preemption, Black's Law Dictionary (12th ed. 2024).  It is rooted in the Supremacy Clause of the Constitution, which provides that federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding," U.S. Const. art. VI, cl. 2.  *Kurns v. R.R. Friction Prod. Corp.*, 565 U.S. 625, 630

9

(2012) (citing *Brown v. Hotel & Restaurant Employees & Bartenders Int'l Union Local 54*, 468 U.S. 491, 500-01 (1984)).

Congress may expressly preempt state law in a federal statute, but even without such an expression, federal law preempts state law in two circumstances. *Kurns*, 565 U.S. at 630 (citing *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372 (2000). The first, commonly referred to a conflict preemption, is when state law conflicts with federal law or federal objectives. *Kurns*, 565 U.S. at 630; *NSRC v. Box*, 556 F.3d 571, 572 (7th Cir. 2009). The second, commonly called field preemption, is "when the scope of a [federal] statute indicates that Congress intended federal law to occupy a field exclusively." *Freightliner Corp. v. Myrick,* 514 U.S. 280, 287 (1995); *Kurns*, 565 U.S. at 630-31.

Federal preemption is an affirmative defense upon which the defendant bears the burden of proof. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019); *Vill. of DePue, Ill. v. Exxon Mobil Corp.*, 537 F.3d 775, 786 (7th Cir. 2008). "[A] court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption," and will not do so unless the text and structure of the statute show Congress clearly intended it. C*SX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) (citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). This includes state common law causes of action such as negligence. *Easterwood*, 507 U.S. at 664.

After considering the express and implied preemption of each of the statutes NSRC invokes, the Court concludes that their preemptive reach is a fact-intensive inquiry not suitable for resolution on a Rule 12(b)(6) motion to dismiss.

1. <u>Federal Railroad Safety Act</u>

NSRC argues that the Trust's state tort claims are preempted by the FRSA's express preemption provisions or because Congress intended to occupy the entire field of railroad safety.

The purpose of the FRSA is to "promote safety in every area of railroad operations and to reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. It gives the Secretary of Transportation ("Secretary") broad authority to make regulations and orders "for every area of railroad safety." 49 U.S.C. § 20103(a). The law envisions a system of uniform nationwide laws, regulations, and orders "to the extent practicable." 49 U.S.C. § 20106(a)(1). However, Congress intended the FRSA to supplement, not replace, existing railroad safety laws. *Kurns v. R.R. Friction Prod. Corp.*, 565 U.S. 625, 633 (2012).

The preemptive effect of the FRSA is addressed expressly by 49 U.S.C. § 20106, which envisions the continuing validity of some state railroad safety laws. It allows state laws "related to railroad safety" to remain "until the Secretary . . . prescribes a regulation or issues an order *covering the subject matter* of the State requirement." 49 U.S.C. § 20106(a)(2) (emphasis added). The Supreme Court has interpreted "covering the subject matter" to mean more than just "touching upon" or "relating to" the subject matter of the state regulation. C*SX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383-84 (1992)); *see NSRC v. Box*, 556 F.3d 571, 571 (7th Cir. 2009) (laws "covering the subject matter" necessarily narrower than laws "relating to railroad safety"). On the contrary, "covering the subject matter" means federal regulations "substantially subsume the subject matter of the relevant state law." *Easterwood*, 507 U.S. at 664.

Additionally, the FRSA expressly permits states to adopt additional or more stringent safety

11

regulations when "necessary to eliminate or reduce an essentially local safety or security hazard" as long as the state regulation is "not incompatible with" federal law and does not "unreasonably burden interstate commerce." 49 U.S.C. § 20106(a)(2). Laws necessary to address "local hazards," however, turn on the facts of each case and do not include general state common law negligence that addresses all hazards caused by lack of due care. *Easterwood*, 507 U.S. at 675

> In 2007, the FRSA was amended to clarify that it shall not
>
> be construed to preempt an action under State law seeking damages for . . . property damage alleging that a party—
> (A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary . . . (with respect to railroad safety matters) . . . covering the subject matter as provided in subsection (a) of this section;
> (B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries [Transportation or Homeland Security]; or
> (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).

49 U.S.C. § 20106(b)(1). Application of the 2007 amendment "is limited to cases in which a plaintiff brings a negligence claim that alleges a railroad failed to comply with an ongoing, federal standard of care." *Grade v. BNSF Ry. Co.*, 676 F.3d 680, 685 (8th Cir. 2012). The amendment does not apply where there is no "ongoing, federal standard of care." *Id.* at 685-86. But it clarifies that if a negligence claim is based on the breach of an "ongoing, federal standard of care," the claim is not preempted even if a federal law "covers the subject matter" under 49 U.S.C. § 20106(a)(2). *Zimmerman v. NSRC*, 706 F.3d 170, 177 (3d Cir. 2013).

NSRC has not convinced the Court that the Trust's state common-law claims are preempted by the NRSA as a matter of law. NSRC refers to Congress's general intent for federal agencies to regulate the nuanced area of railroad transportation safety and hazardous material rail transportation in particular. In support of its assertion of comprehensive federal regulation, it cites 49 C.F.R. Part 213

12

and 49 C.F.R. Part 179 generally. Together, these parts comprise over 250 individual regulations. However, it has not reconciled Congress's general desire with the express exceptions to preemption it listed in the NRSA. Clearly Congress did not intend to preempt the entire field of regulation related to railroad transportation and safety.

To the extent NSRC believes federal regulations "cover the subject matter" of the Trust's claims, it has not cited a single regulation that arguably does that. It relies on vague assertions without any specifics showing why preemption of the Trust's negligence claims under 49 U.S.C. § 20106(a)(2) is appropriate in this case.

NSRC also points out that the Trust has not pled facts showing that the essentially local hazard exception of 49 U.S.C. § 20106(a)(2) to preemption applies and has not pled specific ongoing federal standards or internal rules upon which their claims are based so as to fall within the 2007 amendment, 49 U.S.C. § 20106(b)(1). It is true that the Trust's pleading provides little specifics, but it alerts NSRC that the Trust believes it failed to comply with railroad safety rules. That is enough at this stage of the case; discovery will flesh out the specific bases of the Trust's claims. It is not the Trust's burden to plead around the affirmative defense of preemption. It is NSRC's burden to show the affirmative defense must apply under the facts pled. And the Trust's general pleading that NSRC violated federal law and regulations is sufficient at the motion to dismiss stage.

In sum, NSRC has not carried its burden of showing the NRSA preempts the Trust's state law claims based on the conduct alleged in the complaint. Its arguments for preemption by the FRSA are conclusory and do not persuade the Court that dismissal of the Trust's negligence claims under Rule 12(b)(6) is appropriate. NSRC may, of course, raise the question again on summary judgment. *See Trimbur v. NSRC*, No. 2:13-cv-160, 2015 WL 4755205, \*6-\*8 (S.D. Ohio Aug. 10, 2015).

2. <u>Interstate Commerce Commission Termination Act</u>

NSRC argues that the Trust's state tort claims are preempted by the ICCTA. In 1995, Congress passed the ICCTA to try to minimize federal regulation of the railroad industry. 49 U.S.C. § 10101. As its name suggests, it abolished the Interstate Commerce Commission and transferred its functions to the newly-created Surface Transportation Board ("STB" or "Board"). Congress gave the STB exclusive jurisdiction over the regulation of railroad transportation:

> The jurisdiction of the Board over—
> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
> is exclusive. Except as otherwise provided in this part, the remedies provided under this part *with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law*.

49 U.S.C. § 10501(b) (emphasis added). Congress's intent for the ICCTA "to preempt state and local regulation of railroad transportation has been recognized as broad and sweeping." *Union Pac. R.R. Co. v. Chi. Transit Auth.*, 647 F.3d 675, 678 (7th Cir. 2011); *accord Wedemeyer v. CSX Transp., Inc.*, 850 F.3d 889, 894 (7th Cir. 2017). The ICCTA "regulates the economics and finances of the rail carriage industry—and provides a panoply of remedies when rail carriers break the rules." *N.Y. Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 252 (3d Cir. 2007) (citing 49 U.S.C. §§ 11701-07).

Courts have recognized that ICCTA preemption applies in two ways. *Wedemeyer*, 850 F.3d at 894 (citing *CSX Transp., Inc.—Petition for Declaratory Order,* STB Finance Docket No. 34662, 2005 WL 1024490, at *2-3 (S.T.B. May 3, 2005)); *Union Pac.*, 647 F.3d at 679. The first is categorical, or *per se,* preemption, which applies "when a state or local action is preempted on its face despite its

14

context or rationale." *Union Pac.*, 647 F.3d at 679. The second is "as applied" preemption, which depends on "the degree of interference that the action has on railroad transportation," that is, it applies "when the action would have the effect of preventing or unreasonably interfering with railroad transportation." *Id.* (internal quotations omitted).

It is important to note that preemption by the ICCTA "does not apply to *all* situations where [application of state or local law] prevents or unreasonably interferes with railroad transportation; it applies to those situations where a *regulation* prevents or unreasonably interferes with railroad transportation." *Union Pac.*, 647 F.3d at 682 (emphasis in original). Courts have interpreted "regulation" to mean state laws and regulations that effectively manage or govern the business of railroad transportation. *Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1331 (11th Cir. 2001). They have accordingly held that the ICCTA preempts "state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation." *BNSF Ry. Co. v. Town of Cicero, Ill.*, 592 F. Supp. 3d 716, 728 (N.D. Ill. 2022) (internal quotations omitted) (citing *N.Y. Susquehanna,* 500 F.3d at 252; *Fla. E. Coast Ry.*, 266 F.3d at 1331; *Adrian & Blissfield R.R. Co. v. Village of Blissfield*, 550 F.3d 533, 539 (6th Cir. 2008)); *NSRC v. City of Alexandria*, 608 F.3d 150, 157-58 (4th Cir. 2010).

In other words, to escape preemption, a regulation's substance "must not be so draconian that it prevents the railroad from carrying out its business in a sensible fashion," and "the regulation must be settled and definite enough to avoid open-ended delays." *Adrian & Blissfield R.R.*, 550 F.3d at 541 (internal quotations omitted). "What matters is the degree to which the challenged regulation burdens rail transportation," which "is a fact-intensive inquiry." *N.Y. Susquehanna,* 500 F.3d at 252-53;

15

*accord Adrian & Blissfield R.R.*, 550 F.3d at 540.

No facts the Trust pleads in the Complaint show that its negligence, nuisance, strict liability, or trespass claims, as applied in this case, unreasonably burden or interfere with rail transportation as opposed to simply having a remote or incidental effect on railroad business. Indeed, the Trust's case does not seek to stop NSRC from operating on the track or to otherwise interfere with its business operations. On the contrary, it seeks only to restore the condition of its own adjoining land without any lasting impact on NSRC's railroad management. The Court therefore finds NSRC has not established its affirmative defense of preemption by the ICCTA. It may reassert the defense of preemption on summary judgment where there is more factual development to support that defense.

### 3. Hazardous Materials Transportation Act

NSRC argues that the Trust's state tort claims are preempted by the HMTA. Congress passed the HMTA in 1975 to unify the fragmented nature of regulations governing hazardous material transportation under the sole authority of the Department of Transportation ("DOT"). *See* 49 U.S.C. § 5101. The statute is broad and covers not only those who transport hazardous materials, but others connected with such endeavors. 49 U.S.C. § 5103(b). The statute also contains a provision expressly providing for preemption of state or local law regarding railroads where dual compliance with the HMTA is impossible, where the state or local law is an obstacle to the HMTA's goals, or where the state or local law is not substantively the same as federal law in five subject areas. 49 U.S.C. § 5125(a) & (b).

NSRC has argued, and a number of courts have concluded, that where regulations promulgated by the Secretary of Transportation are involved, the broadly worded preemption provision of the FRSA—which does not specify that it applies only to regulations the Secretary promulgates under the

16

FRSA—applies regardless of the statutory authority under which the Secretary adopts the rule. *See CSX Transp. Corp. v. Easterwood*, 507 U.S. 658, 663 n.4 (1993); *Trimbur v. NSRC*, No. 2:13-cv-160, 2015 WL 4755205, at *5 (S.D. Ohio Aug. 10, 2015). Those courts found that Congress did not intent to repeal the broadly worded preemption provision of the FRSA when it enacted the HMTA. *See CSX Transp., Inc. v. Pub. Util. Comm.*, 901 F.2d 497, 502 (6th Cir. 1990). Thus, the FRSA preemption analysis applies to the HMTA. *In re Miamisburg Train Derailment Litig.*, 636 N.E.2d 85, 89 (Ohio 1994) (citing *CSX Transp., Inc.*, 901 F.2d at 501); *In re E. Palestine Train Derailment*, No. 4:23CV0242, 2024 WL 1096064, at *6 (N.D. Ohio Mar. 13, 2024).

Since the scope of the HMTA is the same as the scope of the FRSA, the preemption arguments for each statute rise and fall together. Thus, for the same reasons the Court rejected the affirmative defense of preemption by the NRSA at this stage of the litigation, it also rejects preemption by the HMTA. These matters may be explored in discovery and addressed again on summary judgment.

For these reasons, the Court declines to dismiss the Trust's state law claims on grounds of preemption.

C.   Counts II, III, IV, and V:   Fact Pleading

NSRC asserts that the Trust's pleading of facts is insufficient to establish a plausible claim for a right to relief in Counts II (negligence), III (nuisance), IV (strict liability) and V (trespass). The Court notes that the Federal Rules of Civil Procedure "do not require a plaintiff to allege legal theories or even facts corresponding to each element of a claim." *Sargeant v. Barfield*, 87 F.4th 358, 361 (7th Cir. 2023); *Zall v. Standard Ins. Co.*, 58 F.4th 284, 295 (7th Cir. 2023). It is enough to plead sufficient fact to plausibly suggests the plaintiff has a right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

17

Drawing on its judicial experience and common sense, *see Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009), the Court finds that the Trust states plausible claims for relief under Counts II, III, IV, and V under the liberal federal notice pleading standard.   The Complaint contains enough facts to alert NSRC to the what the Trust thinks it did wrong, the harm that allegedly flowed from that conduct, and a plausible basis for drawing an inference that NSRC is liable for that harm.   For goodness' sake, an NSRC train derailed on the Trust's private farmland, spilled hazardous chemicals on it, and is now leaving behind rocks that allegedly impede farming activity.   There appears to be little mystery that the accident happened and harm arose from it, leaving only disputes about why it happened and which legal theories should apply.

As for its pleading of specific state law causes of action, the Trust lists the areas in which it claims NSRC breached a duty of care, describes the derailment's unauthorized entry on to the Trust's land and the subsequent interference with its rights to use and enjoy its property, and implies that transportation of MMA was the type of special ultrahazardous activity that gives rise to a strict liability claim.   NSRC invokes the common-carrier exception to strict liability under which common carrier cannot be strictly liable for harm caused by hazardous load that it may not refuse to accept for transport.   *See* Restatement (Second) of Torts § 521; *Indiana Harbor Belt R. Co. v. Am. Cyanamid Co.*, 916 F.2d 1174, 1180 (7th Cir. 1990).   However, NSRC has not demonstrated that, although a majority of states have accepted it, Illinois has adopted—or is likely to adopt—such an exception.

In sum, the Trust's pleading gives NSRC a basis for directing its inquiries in discovery to flesh out the theories and additional factual details of the Trust's claims.   This is all the liberal federal notice pleading standard requires in this case.   For these reasons, the Court declines to dismiss Counts II, III, IV, and V for failure to state a claim.

## V.     Conclusion

For the foregoing reason, the Court **DENIES** NSRC's motion to dismiss (Doc. 8), including its request for oral argument.

**IT IS SO ORDERED.**
**DATED: December 6, 2024**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
